91 N.Y.2d 98 (1997)
689 N.E.2d 1373
667 N.Y.S.2d 327
In the Matter of Raritan Development Corp. et al., Appellants,
v.
Gaston Silva et al., Respondents.
Court of Appeals of the State of New York.
Argued September 10, 1997
Decided October 28, 1997.
Tenzer Greenblatt, L. L. P., New York City (James G. Greilsheimer and Lawrence S. Feld of counsel), for appellants.
Paul A. Crotty, Corporation Counsel of New York City (Virginia Waters, Leonard Koerner and Ellen B. Fishman of counsel), for respondents.
Sean M. Walsh, Douglaston, for Federation of Civic Councils of the Borough of Queens, Inc., amicus curiae.
Chief Judge KAYE and Judges TITONE, BELLACOSA and CIPARICK concur with Judge SMITH; Judge LEVINE dissents and votes to affirm in a separate opinion in which Judge WESLEY concurs.
*100 SMITH, J.
Respondents, the Commissioners of the Board of Standards and Appeals of the City of New York (BSA), argue that this Court should defer to the agency's interpretation of section 12-10 of New York City's Zoning Resolution. However, when an interpretation is contrary to the plain meaning of the statutory language, we have typically declined to enforce an agency's conflicting application thereof. We see no compelling reason to depart from that long-established rule in this case.
In calculating the Floor Area Ratio (FAR) for zoning purposes, floor area includes the total amount of "floor space used for dwelling purposes, no matter where located within a building, when not specifically excluded; * * * However, the floor area of a building shall not include * * * cellar space." *101 Contrary to respondents' argument, we find that this language clearly provides that "cellar space" is excluded from "floor area" without further qualification. We further conclude that such an interpretation is not "absurd." The Appellate Division's order should be reversed.

BACKGROUND
A development of two-family residences on Staten Island was planned in a R3-2 zoning district. That zoning district permits a "floor area ratio" of 0.50 for each building. That ratio means that the total floor area of each building may not exceed 50% of the area of the lot on which the residence is situated. One particular residence was designed to be a trilevel residential building with one dwelling unit comprised of the top two floors and another single dwelling unit on the ground floor. The architect calculated the FAR without including the floor space of the ground floor.
The relevant zoning provision, Zoning Resolution § 12-10, provides in relevant part:
"`Floor area' is the sum of the gross areas of the several floors of a building or buildings, measured from the exterior faces of exterior walls or from the center lines of walls separating two buildings. In particular, floor area includes: * * *
"(g) any other floor space used for dwelling purposes, no matter where located within a building, when not specifically excluded; * * *
"However, the floor area of a building shall not include:
"(a) cellar space".
The Zoning Resolution defines "cellar" in R3 zoning districts as: "a space wholly or partly below the base plane with more than one-half its height (measured from floor to ceiling) below the base plane." It is conceded by both parties that the ground floor of the subject residence fits within this definition of a "cellar."
On October 14, 1993, the New York City's Department of Buildings (DOB) objected to the architect's FAR calculations because the ground level was a "dwelling unit" and should have been included in the FAR calculations notwithstanding the fact that the ground floor was a "cellar" as that term is defined in the Zoning Resolution. The DOB found that the cellar *102 space exclusion only applied to "true cellar space, space used for nonhabitable purposes, such as for furnace rooms, utility rooms, auxiliary recreation rooms, etc." The DOB further claimed that this interpretation was consistent with the "Zoning Resolution's treatment of basement space and the Multiple Dwelling Law's treatment of cellar space."
The DOB also claimed that the "past practice and policy in interpreting the 1916 Zoning Resolution and the current Zoning Resolution has consistently been to require a habitable room at the zoning cellar level to be included as floor area." Previous approvals that did not conform to this interpretation were allegedly "given in error."
The DOB revoked petitioners' building permit and denied the architect's request for reconsideration. The development corporation of the residential community appealed to the BSA. The BSA noted that the Department of City Planning, "the drafters of the Zoning Resolution, strongly supports the determination of the Department of Buildings based upon the language of the Zoning Resolution, the legislative history of the definition of `floor area' and the interpretation of the Zoning Resolution in conjunction with the Multiple Dwelling Law." The BSA denied the appeal and found that DOB's ruling had been "reasonable and rational."
Petitioners filed this CPLR article 78 proceeding to annul the BSA's decision. Supreme Court examined the legislative history of the provision and determined that cellar space to be used as dwelling space should be included in the FAR calculation. The court also found that DOB had consistently adhered to that interpretation which reflected standard industry practice. The Appellate Division affirmed and found BSA's interpretation rational and supported by legislative history. This Court granted leave to appeal.

ANALYSIS
Contrary to the parties' assertions, this Court has consistently applied the same standard of review for agency determinations. Where "the question is one of pure legal interpretation of statutory terms, deference to the BSA is not required" (Matter of Toys "R" Us v Silva, 89 N.Y.2d 411, 419). On the other hand, when applying its special expertise in a particular field to interpret statutory language, an agency's rational construction is entitled to deference (see, Matter of Jennings v New York State Off. of Mental Health, 90 N.Y.2d 227, 239; Kurcsics v Merchants Mut. Ins. Co., 49 N.Y.2d 451, 459). *103 Even in those situations, however, a determination by the agency that "runs counter to the clear wording of a statutory provision" is given little weight (Kurcsics v Merchants Mut. Ins. Co., 49 NY2d, at 459; see also, Matter of Toys "R" Us v Silva, 89 NY2d, at 418-419).
The statutory language could not be clearer. As noted above, a cellar is defined within the Zoning Resolution in terms of its physical location in a building. "Floor area" includes dwelling spaces when not specifically excluded and "cellar space," without further qualification, is expressly excluded from FAR calculations.[1] Thus, FAR calculations should not include cellars regardless of the intended use of the space. BSA's interpretation conflicts with the plain statutory language and may not be sustained.
BSA urges this Court to ignore the obvious interpretation of the Zoning Resolution and, instead, to look beyond the pages of statutory text. BSA attempts to justify its reading by first referring this Court to the language of a former version of the regulation. In 1916, the Zoning Resolution defined "floor area" as "the sum of the gross horizontal areas of the several floors * * * but excluding * * * basement and cellar floor areas not devoted to residence use." BSA is correct that the 1916 Zoning Resolution supports its contention that cellar space is only excluded from FAR calculations when not used for residential purposes.
However, the provision was changed in 1961 to its present text. In the amended text, cellar spaces were excluded from floor area without qualification. There is no evidence that the changed meaning was accidental or superfluous (see, Mabie v Fuller, 255 N.Y. 194, 201 ["We must assume that the Legislature in enacting the section intended that it should effect some change in the existing law and accomplish some useful purpose"]). Still, BSA insists that the amendment did not change the law.
For example, BSA argues that it has always interpreted the resolution a particular way so, presumably, it should be allowed to continue to do so. Such evidence might be more compelling *104 if the present text of the Zoning Resolution offered any support. It should also be noted that BSA concedes that it has not consistently interpreted the statute in the same manner as it did here.
Perhaps most telling is BSA's contention to Supreme Court that its interpretation of the Zoning Resolution is consistent with the Multiple Dwelling Law which applies to residential buildings for three or more families. As BSA notes in its answer, which was verified by its Commissioner:
"Section 26 of Title I in Article 3 of the Multiple Dwelling Law reads (under paragraph 2 Definitions):
"b. `Floor area': the sum of the gross horizontal areas of all of the several floors of a dwelling or dwellings and accessory structures on a lot measured from the exterior faces of exterior walls or from the center line of party walls, except:
"1. cellar not used for residential purposes."
Unfortunately, BSA relies upon a version of the law which was amended over a decade ago. In 1985, the definition of the exclusion was modified from "cellar not used for residential purposes" to the unqualified "cellar space" (see, L 1985, ch 857, § 1). According to the legislative memorandum which accompanied the text of the new law, the "amendment resolves [a] conflict by correlating the bulk of yard regulation requirements of the Multiple Dwelling Law with those of the Local Zoning Resolution, thus providing one clear set of guidelines for professionals and administrators" (1985 McKinney's Session Laws of NY, at 3171). The memorandum concludes that "the Mayor urges upon the Legislature the earliest possible favorable consideration of this proposal" (id.). Thus, it was thought in 1985 that the unqualified exclusion of cellar space from floor area calculations would be in conformity with the Zoning Resolution. BSA's reliance on outdated laws to justify its reading of the Zoning Resolution would be yet another reason to annul its determination.
Essentially, BSA has (sometimes) grafted onto the language of the current Zoning Resolution an addendum of its own whereby only certain cellars are excluded from floor area calculations. Typically, we have declined to uphold such an interpretation (see, Matter of Chemical Specialties Mfrs. Assn. v Jorling, 85 N.Y.2d 382, 394 ["`(N)ew language cannot be *105 imported into a statute to give it a meaning not otherwise found therein'"], quoting McKinney's Cons Laws of NY, Book 1, Statutes § 94, at 190). Moreover, the conclusion reached herein is not "absurd" as the BSA contends.
FAR is related to the density of land use and such regulations have been upheld as reasonable (see, Pondfield Rd. Co. v Village of Bronxville, 1 AD2d 897, affd without opn 1 N.Y.2d 841; 1 Anderson, New York Zoning Law and Practice § 9.46 [3d ed]). BSA contends that its interpretation of the Zoning Resolution would prevent "the additional burden" of increased neighborhood population upon schools and parking. However, FAR calculations were not designed to control population.
As noted above, FAR is comprised of total floor area within the building divided by the total area of the lot containing the building. Since residential areas have lower FAR, more lot is required to build larger buildings. Such concerns restrict physical development within a neighborhood (see, 7 Rohan, Zoning and Land Use Controls § 42.06 [2] [c] [1997] ["Through this device, zoning ordinances restrict the amount of development on a lot by specifying the ratio that the floor area of a building may bear to the lot area"]; see also 3 Rathkopf, Zoning and Planning § 34C.02 [1] [4th ed] [the "`floor area ratio' or F.A.R. technique is widely used today to establish the gross maximum size of a building in terms of the amount of floor area permitted therein"]).
It has also been stated that "[o]ne way to control the size of a building is to limit its overall volume" through FAR limits (7 Rohan, Zoning and Land Use Controls, at App 42-10; see also, 3 Rathkopf, Zoning and Planning § 34C.02 [1] [4th ed] ["A more flexible method of regulating bulk is establishing a ratio between the size of the lot and the gross floor area of the principal building to be erected thereon"]). Indeed, the area regulations of New York City were originally enacted to regulate bulk in building development (see, Bassett, Zoning: The Laws, Administration, and Court Decisions During the First Twenty Years, at 62 ["Many ordinances have followed that of New York City in limiting building area to a fraction of the lot area. * * * The regulation must not be so drastic that it compels an absurdly small house on a normal lot or an unreasonably large lot for a normal house"]).
It seems clear that such zoning restrictions were never designed to combat the erection of primarily underground housing levels which do not contribute to bulky, high-rise *106 development.[2] It is eminently logical that cellars, housing levels that are more than halfway below the ground, would be excluded from FAR calculations notwithstanding the actual or intended use of the space. Consistent with the purpose of FAR restrictions to control building density, it should be noted that basement space, also defined in the Zoning Resolution in terms of its physical location within a building as being more than halfway above ground, is included in FAR calculations to the same extent as similarly situated space. Contrary to the views expressed in the dissenting opinion, we find nothing in zoning treatises, California case citations or the legislative history of the 1990 amendment to the Zoning Resolution that would indicate a contrary legislative intent regarding the 1961 amendments to the Zoning Resolution which excluded cellars, in unqualified language as to the intended use, from FAR calculations.
In sum, BSA urges this Court to disregard the plain meaning of the Zoning Resolution because (1) the former version of the Zoning Resolution should be binding upon any interpretation of the amended language thereof; (2) BSA's interpretation is consistent with an outdated version of the Multiple Dwelling Law; (3) the Zoning Resolution was amended to require cellars to be measured from the surrounding ground level rather than curb level to prevent overexcavation of lots; (4) BSA has inconsistently interpreted the Zoning Resolution in a particular manner; and (5) BSA seeks to prevent overcrowding through provisions designed to control physical bulk of buildings. We find such arguments to be unpersuasive.
This Court has long applied the well-respected plain meaning doctrine in fulfillment of its judicial role in deciding statutory construction appeals. We agree that "[i]t is fundamental that a court, in interpreting a statute, should attempt to effectuate *107 the intent of the Legislature," but we have correspondingly and consistently emphasized that "where the statutory language is clear and unambiguous, the court should construe it so as to give effect to the plain meaning of the words used" (Patrolmen's Benevolent Assn. v City of New York, 41 N.Y.2d 205, 208 [emphasis added] [citations omitted]; see, Doctors Council v New York City Employees' Retirement Sys., 71 N.Y.2d 669, 674-675).
We have provided further clear teaching and guidance that "[a]bsent ambiguity the courts may not resort to rules of construction to broaden the scope and application of a statute," because "no rule of construction gives the court discretion to declare the intent of the law when the words are unequivocal" (Bender v Jamaica Hosp., 40 N.Y.2d 560, 562 [emphasis added] [citations omitted]). Lastly, "[t]he courts are not free to legislate and if any unsought consequences result, the Legislature is best suited to evaluate and resolve them" (id. [emphasis added]). Based on this Court's adherence to these respectable principles and precedents as primary sources of authority for the legitimacy of the plain-meaning doctrine, we reject the dissent's characterization of the statutory construction tool generally and as applied in this case.
BSA's interpretation is not only against the plain meaning of the resolution's text and contrary to the Multiple Dwelling Law, but also contrary to the purpose behind FAR restrictions in general. There is no statutory or practical support for BSA's strained construction of the Zoning Resolution for FAR calculations. The solution here is for the City to legislate a different definition if that is its intent, to be manifested by the ordinance itself.
The Appellate Division order should be reversed, with costs, the petition granted and the determination of respondent Board of Standards and Appeals revoking petitioners' building permit annulled.
LEVINE, J. (dissenting).
We respectfully dissent. This case presents an unfortunate yet graphic example of the plain-meaning doctrine in operation, eschewing as it does other sources and evidence of legislative intent, such as context, legislative history and the purpose of the enactment. The majority appears to elevate the plain-meaning rule to a point of interpretive primacy not supported by our precedents. Although, to be sure, our Court has employed plain-meaning arguments in the past (see, e.g., Patrolmen's Benevolent Assn. v City of New York, 41 N.Y.2d 205, 208; *108 Bender v Jamaica Hosp., 40 N.Y.2d 560, 561-562), our prevailing view has been, wisely, that the overarching duty of the courts in statutory interpretation is always to ascertain the legislative intent through examination of all available legitimate sources. "The legislative intent is the great and controlling principle. Literal meanings of words are not to be adhered to or suffered to `defeat the general purpose and manifest policy intended to be promoted'" (People v Ryan, 274 N.Y. 149, 152; see, Matter of Sutka v Conners, 73 N.Y.2d 395, 403; Matter of Albano v Kirby, 36 N.Y.2d 526, 529-531; Matter of Petterson v Daystrom Corp., 17 N.Y.2d 32, 38).
Chief Judge Breitel articulated well the predominant view of this Court in New York State Bankers Assn. v Albright (38 N.Y.2d 430): "Absence of facial ambiguity is * * * rarely, if ever, conclusive. The words men use are never absolutely certain in meaning; the limitations of finite man and the even greater limitations of his language see to that. Inquiry into the meaning of statutes is never foreclosed at the threshold" (id., at 436). The Court went on to quote, with approval, the Supreme Court's opinion in United States v American Trucking Assns. (310 US 534, 544):
"`Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one "plainly at variance with the policy of the legislation as a whole" this Court has followed that purpose, rather than the literal words. When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no "rule of law" which forbids its use, however clear the words may appear on "superficial examination"'" (New York State Bankers Assn. v Albright, 38 NY2d, at 437, supra [emphasis supplied]).
Criticism of the plain-meaning doctrine has long been expressed by legal scholars as frustrating legislative objectives and placing unrealistic demands upon the legislative process (see, Murphy, Old Maxims Never Die: The "Plain-Meaning Rule" and Statutory Interpretation In The "Modern" Federal Courts, 75 Colum L Rev 1299 [1975]). More recently, in the current debate over the "new textualism" (see, e.g., Eskridge, The New Textualism, 37 UCLA L Rev 621 [1990]; Shapiro, Continuity and Change in Statutory Interpretation, 67 NYU L Rev 921 *109 [1992]), legal and linguistic scholars have criticized the plain-meaning doctrine for oversimplifying the task of interpretation and for, itself, creating new interpretative problems (see, Cunningham, Levi, Green and Kaplan, Plain Meaning and Hard Cases, 103 Yale LJ 1561 [1994], reviewing Solan, The Language of Judges [1993]).
Simply put, even if a court might encounter that rare case where the words of a statute are so utterly and indisputably clear (notwithstanding the litigants' dispute over their meaning) that the court could correctly interpret the statute's meaning merely by reading its words, this is not that case.
The issue here is whether space to be used as actual living quarters, located partly below ground at the lowest level of a house in a residential zoning district, is to be excluded from the calculation of the floor area ratio (FAR) under New York City Zoning Resolution § 12-10. The applicable FAR, as the majority points out (majority opn, at 101), would limit the total floor area of petitioners' residential building to 50% of the square footage of the lot on which it is situated.
Petitioners claim that the space, irrespective of its use as a dwelling unit, falls literally within the definition of "cellar" space introduced in a 1990 amendment to Zoning Resolution § 12-10, as "space wholly or partly below the base plane, with more than one half its height (measured from floor to ceiling) below the base plane" (NY City Zoning Resolution § 12-10, "cellar" [emphasis in original]). Section 12-10 excludes cellar space as such from the floor area numerator of the FAR (see, id., § 12-10, "Floor area"  exclusions [a]).
Respondents, constituting the Board of Standards and Appeals of the City of New York (BSA) and the New York City Department of Buildings, however, determined that the cellar space exclusion was inapplicable here because the space in question is not used as a cellar but, rather, as a subsurface apartment. Supreme Court and the Appellate Division agreed (231 AD2d 725). The BSA relied upon, among other things, subdivision (g) of the floor area component of section 12-10, which directly applies to the space at issue, mandating that floor area includes:
"any other floor space used for dwelling purposes, no matter where located within a building, when not specifically excluded" (NY City Zoning Resolution § 12-10 ["Floor area" (g); emphasis supplied]).
The majority holds that subdivision (g) does not require *110 petitioners' partly below ground living quarters to be included in floor area because cellar floor space is "specifically excluded." Therefore, the majority reasons, a cellar always falls within the exception to subdivision (g), which otherwise includes all space used for dwelling purposes irrespective of its location in the building (id.).
To be sure, the "specifically excluded" exception to the inclusion of all space devoted to dwelling purposes under subdivision (g) can be read, as interpreted by the majority, to refer to any space excluded elsewhere in the Zoning Resolution. Nevertheless, the provision can be read with at least equal plausibility not to apply to cellar living quarters. Thus, the "specifically excluded" exception can easily be interpreted as applying only to "floor space used for dwelling purposes" (id.) which is specifically excluded as such elsewhere in the statute. Reading the exception in this fashion, since cellar space used for dwelling purposes is not "specifically excluded" from floor area anywhere in the Zoning Resolution, the BSA correctly determined that the floor space of petitioners' subsurface apartment had to be counted in the FAR calculation.
The foregoing contrasting interpretations of the treatment of dwelling space/floor area in Zoning Resolution § 12-10 present a paradigm of what linguists refer to as "structural ambiguity [in which] interpretive difficulties arise not from indeterminacy as to the meaning of individual words but from ambiguity as to the relationship of the words in a sentence structure" (Cunningham, Levi, Green and Kaplan, Plain Meaning and Hard Cases, 103 Yale LJ, at 1570 [emphasis supplied]). Here, the text of subdivision (g) alone does not resolve the issue as to whether the "specifically excluded" phrase in that provision refers to any space otherwise expressly excluded from floor area, or solely to any "other floor space used for dwelling purposes" specifically excluded as such (see, NY City Zoning Resolution § 12-10 "Floor area" [g] [emphasis supplied]). For us, the irrefutable existence of that ambiguity is sufficient to resolve this appeal in the Board's favor. We would defer to the BSA's interpretation, the agency we have recognized as having responsibility for implementing the statutory purposes of New York City Zoning Resolution § 12-10, which not even petitioners dispute is consistent with the general policy of this FAR legislation. Moreover, as the BSA points out, the statute explicitly directs that in the event of an internal conflict between provisions in the regulations over the bulk of buildings, the "more restrictive" provision controls (NY City Zoning Resolution § 11-22).
*111 Even without according deference to the BSA's interpretation, inclusion in floor area of cellar space used for dwelling purposes, because space used that way is not otherwise "specifically excluded," represents a sounder reading of the "dwelling purpose" inclusory language of subdivision (g), and is more consistent both with section 12-10 as a whole, and with the legislative history and transcendent purpose of the Zoning Resolution.
First, consistent with the BSA's interpretation, Zoning Resolution § 12-10 actually contains a defined floor space used for dwelling purposes which is "specifically excluded" as such from floor area. Under subdivision (i) of the exclusionary portion of section 12-10, the lowest stories of qualifying houses in specific residential zoning districts are excluded from floor area if used as a "furnace room, utility room, auxiliary recreation room" (NY City Zoning Resolution § 12-10, "Floor area"  exclusions [i] [3] [emphasis supplied]). Thus, it is readily apparent that what was contemplated in the "specifically excluded" exception to the catchall provision (otherwise including in floor area all space used for dwelling purposes) was those particular spaces devoted to some dwelling uses, which the legislative body determined were not to be counted as floor area in the FAR calculation. This conclusion is reinforced by the fact that both subdivision (g) of the floor area definitional portion of section 12-10, in its present form, and the specific exclusion of certain lower story space utilized for dwelling purposes such as a utility or recreation room, were added simultaneously to the Zoning Resolution in 1961. Thus, the most plausible explanation for the insertion of the "specifically excluded" exception was to avoid conflict between the foregoing provisions.
The majority's interpretation relies heavily upon the fact that, whereas the 1916 Zoning Resolution expressly excluded from floor area basements and cellars only when "`not devoted to residence use,'" the 1961 recodification flatly excluded cellars without the nonresidential use qualification (see, majority opn, at 103, 106). However, the 1961 resolution substituted the floor area catchall provision contained in subdivision (g) for the 1916 specific exclusion of nonresidential cellar and basement space (see, NY City Zoning Resolution § 12-10, "Floor area" [g] [including in floor area any space used for dwelling purposes "no matter where located"] [emphasis supplied]). It was, therefore, unnecessary to retain the 1916 nonresidential use qualification in the 1961 Zoning Resolution cellar space exclusion. Thus, the absence of that nonresidential use qualification *112 in the cellar exclusion is of no significance whatsoever in interpreting the all-inclusory dwelling space language in subdivision (g) of the 1961 resolution (still in effect), which is the dispositive issue in this case.
It is also highly unlikely that in the 1961 FAR recodification, the legislative body had the intent ascribed to it by the majority, i.e., to permit exclusion from floor area of cellar space used for residential purposes. In the general purpose clause of the 1961 Zoning Resolution, subdivision (d) recites that a specific purpose of the resolution was "[t]o protect residential areas against congestion, as far as possible, by regulating the density of population" (NY City Zoning Resolution § 21-00 [d], Statement of Legislative Intent [emphasis supplied]). Permitting cellar area devoted to residential use to be excluded from the numerator of the FAR formula hardly comports with that purpose.
Moreover, the legislative history of the present "base plane" definition of excluded cellar space in Zoning Resolution § 12-10, upon which petitioners concededly must rely in order to exclude, from the FAR, the lowest level living quarters of its building, makes it absolutely clear that the "base plane" definition was never intended to change the settled construction of the prior law which limited the exclusion to "true" cellar space (as commonly understood) and not space, as urged by petitioners, used as a cellar apartment. The present "base plane" definition was added in a 1990 amendment to Zoning Resolution § 12-10. Prior to 1990, and at least as early as 1961, section 12-10 differentiated between basement space and cellar space, and the difference in treatment was maintained in the current statutory scheme. Basement space, even when not used for dwelling purposes, was previously and still is included in floor area for determining the FAR. The definitions of basement space and cellar space were (and are) complementary and employed essentially to differentiate one from the other.
As explained in the legislative memorandum in support of the 1990 amendment, the differences between basement and true cellar spaces were originally defined in terms of their location in relation to the curb level of the building lot (see, New York Dept of City Planning, Lower Density Zoning, Proposed Follow-up Text Amendment: A Planning Report, at 35 [1990]). Under the 1961 Zoning Resolution, basement space was defined as space partly below curb level, with at least one half of its height above curb level (id.). Cellar space, although similar, was space whose height was more than one half below curb level (id.).
*113 The 1990 amendments only changed the benchmark differentiation between basement and cellar space from curb level to base plane (id., at 35-36). Significantly, this change was enacted to address the unintended result of the prior definition, which encouraged needless excavation of upwardly sloping lots in order to avoid having true cellar space counted as basement space, and thereby included in floor area (see, id., at 35). Thus, there is not even the hint of any indication that the decisive amendment of the definition of cellar space, upon which petitioners must rely, was intended to expand the cellar exclusion to space used for subsurface living quarters. Indeed, the manifestation of intent regarding the amendment was completely to the contrary. The 1990 amendment also contained a proviso for reverting the benchmark of the basement and cellar space differentiation back to curb level under certain circumstances "to reduce the potential abuse of this [base plane] provision by excavation of yards, turning cellars into floor space suitable for additional bedrooms and accessory units" (id., at 36 [emphasis supplied]).
Furthermore, as already pointed out, the function of the definition of cellar has nothing whatsoever to do with determining whether any cellar space actually used for dwelling purposes is to be excluded from floor area. Rather, in context, the definition is designed solely to differentiate cellar space from basement space, the latter space always being included in floor area irrespective of its nonuse for dwelling purposes.
Finally, the majority's application of the plain-meaning doctrine here, to permit the exclusion from floor area of cellar space converted to an actual dwelling unit, directly conflicts with the underlying purpose of the FAR concept embodied in New York City Zoning Resolution § 12-10. Contrary to the suggestion in the majority writing that the purpose of the FAR is an apparently aesthetic one, merely to restrict the bulk of buildings within the zoning district and therefore was "never designed to control population" (majority opn, at 105), and was "never designed to combat the erection of primarily underground housing levels which do not contribute to bulky, high-rise development" (majority opn, at 105-106), the well-recognized purpose of FAR residential zoning regulation is to control population density with its resultant adverse impact on quality of life and overtaxing of governmental services within the zoning district.
It should be self-evident and beyond dispute that the primary effect of restricting the amount of buildable floor space *114 for each building lot in a residential district, through a FAR, will be to limit the aggregate habitable space occupied by people within the zoning district, i.e., its population density.
As explained by Rohan, among the various height, bulk and density controls and "measurement restrictions imposed through the use of zoning power [are] * * * devices for limiting population density, i.e., minimum lot areas, frontage requirements and floor area ratio" (7 Rohan, Zoning and Land Use Controls § 42.01 [5], at 42-10  42-11 [1997] [emphasis supplied]; see generally, id., ch 42, at 42-1 ["Measurement Controls: Height, Bulk and Density"]). The Rathkopf treatise discusses zoning controls on building area, bulk and floor size, "including floor-area-ratio restrictions that are tied to overall lot size" (3 Rathkopf, Zoning and Planning § 34C.01, at 34C-1 [Ziegler 4th ed] [emphasis supplied]). The author characterizes the function of these controls as including "protection of public health and safety, [and] prevention of overcrowding and traffic congestion" (id., § 34C.02 [2], at 34C-6 [emphasis supplied]). Additionally, in Broadway, Laguna, Vallejo Assn. v Board of Permit Appeals, a leading early case on the validity of zoning regulation through FARs, the court stated that: "the consensus among zoning authorities is that, in terms of controlling population density and structural congestion, the technique of restricting the ratio of a building's rentable floor space to the size of the lot on which it is constructed possesses numerous advantages" (66 Cal 2d 767, 771, 427 P2d 810, 813 [emphasis supplied]). Indeed, ironically, the legislative report in support of the very amendment to Zoning Resolution § 12-10 relied upon by petitioners here is entitled "Lower Density Zoning, Proposed Follow-up Text Amendment" (New York Dept of City Planning [1990] [emphasis supplied]). Moreover, as previously noted, the general purpose clause of the 1961 Zoning Resolution militates strongly against the majority's interpretation of that law's modification of the cellar exclusion as permitting cellar residences to be omitted from the FAR equation.
Thus, petitioners' interpretation of section 12-10 (adopted by the majority here), permitting a developer to set up a cellar dwelling unit not subject to FAR restrictions, is diametrically opposed to the basic purposes of the Zoning Resolution. This alone should be enough to reject petitioners' interpretation, even if the "plain meaning" of the words supported that interpretation (see, New York State Bankers Assn. v Albright, supra, quoting United States v American Trucking Assns., supra; see also, Cabell v Markham, 148 F.2d 737, 739 [Hand, J.] ["The defendants have no answer except to say that we are not free to depart from the literal meaning of the words, however transparent may be the resulting stultification of the scheme or plan as a whole. Courts have not stood helpless in such situations; the decisions are legion in which they have refused to be bound by the letter, when it frustrates the patent purpose of the whole statute"], affd 326 US 404).
*115 Because the pertinent provisions of New York City Zoning Resolution § 12-10 are at the least ambiguous, and because the BSA's interpretation of subdivision (g) is consistent with section 12-10 as a whole, its legislative history and patent statutory purpose, we would uphold the Board's determination and affirm the dismissal of the petition by the courts below.
Order reversed, etc.
NOTES
[1] The dissent interprets the exclusionary language to apply to dwelling space "which is specifically excluded as such" (dissenting opn, at 110 [emphasis in original]). The provision, of course, is not so limited. Where, as here, the language is unambiguous, and the result not absurd, we see no reason to depart from the legislative text.
[2] In a 1990 Planning Report prepared by the Department of City Planning, it is stated that under current regulations, a "cellar does not count as floor area" and "cellars are exempt from floor area calculations" (see, New York Dept of City Planning, Lower Density Zoning, Proposed Follow-up Text Amendment: A Planning Report, at 35, 37 [June 1990]). Previously, the resolution defined a cellar as more than halfway below "curb" level which caused developers to "level" lots so that a ground floor could still qualify as a "cellar." The Zoning Resolution was amended to provide that "the base plane [ground], and not curb level, be the benchmark for determining whether floor space is a basement or cellar." Thus, a basement, "with more than half its height" above the ground would count as floor area but cellars on sloping sites, even if situated above "curb level" would be excluded in such calculations.